IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASON SHELL, *et al.*, | ) CASE NO. 1: 19 CV 2043 |
| Plaintiffs, | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| PIE KINGZ, LLC, *et al.*, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| Defendants. | ) |

This matter is before the Court on the named Plaintiff's Motion to Send Notice to Similarly Situated Employees. (ECF #13). Defendant opposed the motion, and Plaintiff filed a Reply in support of his position. (ECF #17, 19). For the reasons that follow, Plaintiff's Motion is DENIED.

## I. PROCEDURAL AND FACTUAL BACKGROUND

The Named Plaintiff, Jason Shell, brought this putative class and collection action on behalf of himself and "all others\ similarly situated delivery drivers" for the Westside Cleveland area Jet's Pizza stores. He claims that the Defendants had multiple policies and/or practices in place at its stores that violated the Fair Labor Standards Act. The alleged practices and policies included paying less than minimum wage for the performance of duties that were unrelated to

their tipped work as delivery drivers; underpaying delivery drivers for the reasonably approximate costs of the business use of their personal vehicles; and failing to inform delivery drivers that their wages would be subject to a tip credit. The parties do not dispute that the applicable minimum wage is $7.25/hour, and that the Plaintiff in this case received $7.00/hour, plus tips and delivery fees.[1] Plaintiff's average total payment, from January 1 through August 31, 2019 was approximately $16.04/hour.

The currently pending motion seeks conditional certification of this action as a collective action under the Fair Labor Standards Act ("FLSA"), and permission to send notices of this action to all similarly situated current and former delivery drivers employed at the Westside Cleveland area Jet's Pizza stores owned by the Defendants during the three years prior to the filing of this action, in order to inform them of their right to opt in to this lawsuit.

## II. DISCUSSION

### A. Standard of Review

The Fair Labor Standards Act ("FLSA") seeks to provide "specific minimum protections to individual workers" and to ensure that each covered worker receives a "fair day's pay for a fair day's work. *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). The Act allows one or more employees to bring an enforcement action on their own behalf and as a representative for other similarly situated employees. 29 U.S.C. §216(b).

The statutory standard for bringing a collective action under the FLSA is that the opt-in plaintiffs must be "similarly situated," and it should not generally rely on any assessment of the

---

[1] The parties agree the Pie Kingz paid a delivery fee of $1.25 per delivery in 2018 and $1.50 per delivery in 2019.

merits of the case. *Creely v. HCR ManorCore, Inc.*, 789 F.Supp.2d 819, 826 (2011). This does not mean they must be identical, but the plaintiff has the burden of showing that the putative class is similarly situated with regard to the claims asserted. *Id.* at 823. The plaintiff bears the burden of demonstrating the existence of a common policy or practice that affects all the collective members. *Harrison v. McDonald's Corp.*, 411 F.Supp. 2d 862, 868 (S.D. Ohio 2005).

Many courts within and without the Sixth Circuit have adopted a two-stage process for determining whether an FLSA action should proceed as a collective action. *See, e.g., Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006). At the initial notice stage the Court "determine[s] whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Heibel v. U.S. Bank Nat'l Assoc.*, No. 2:11-cv-593, 2012 WL 4463771, at *2 (S.D. Ohio Sept. 27, 2012). During this part of the process, the Court determines based on the complaint and some modest factual allegations, whether there is a colorable basis for their claim that the putative class is "similarly situated" with regard to plausibly alleged claims. If so, the Court generally permits opt-in notification and additional discovery. The requirement that Plaintiff present some factual allegations is not a stringent standard, but is more than a mere formality. *See, Nogueda v. Granite Masters, Inc.*, No. 2:09-CV-374, 2010 U.S. Dist. LEXIS 37657, *6 (N.D. Ind. Apr. 14, 2010). Although the standard is fairly lenient, conditional certification is neither automatic nor presumed. *See, e.g., Xavier v. Belfour USA Group, Inc.*, 585 F.Supp. 2d 873, 877 (E.D. La. 2008). Further, the factual assertions of both parties must be considered at this stage. *See, e.g., Hadley v. Journal Broadcast Group, Inc.*, No. 11-C-147, 2012 U.S. Dist. LEXIS 19452, *1 (E.D. Wis. Feb. 16, 2012); *Saleen v. Waste Management*, 649 F.Supp.2d 937, 942 (D. Minn. 2009).

At this stage, the existence of significant individualized issues does not necessarily preclude conditional certification. *See, White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006). However, a plaintiff cannot conditionally certify a class unless they have demonstrated that they, themselves, have a viable FLSA claim, that the alleged illegal practices are companywide, and that, therefore, other workers are similarly situated with regard to the claims set forth in the complaint. *See, England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 508 (M.D. La. 2005); *White v. Baptist Mem'l Health Care Corp.*, No. 08-2478, 2011 WL 1883959, at *5 (W.D. Tenn. May 17, 2011).

The second stage of the inquiry takes place after discovery. Following the completion of discovery, if the Defendants believe that the evidence indicates that the plaintiff's claims are more individualized than similar, the defendant may file a motion to decertify the class. *Heibel v. U.S. Bank Nat'l Assoc.*, No. 2:11-cv-593, 2012 WL 4463771, at *2. At the conclusion of full discovery, the court applies a stricter standard for proving that the parties should be treated as a class.

B. **Analysis**

Plaintiff submitted a Declaration in support of his motion in which he states that he has worked for three of the four Pie Kingz locations, and that all four locations operate under the same pay policies and procedures for delivery drivers. Mr. Shell declares that:

1. He receives an hourly wage rate of $7.00/hour for the all the work he performs for Pie Kingz;

2. He is required to work inside the restaurant folding pizza boxes, washing dishes, and performing other general tasks when he is not driving;

3. He drives and maintains his own car for deliveries;

4. He was paid $1.25 per paid delivery in 2018, and $1.50 per paid delivery in 2019;

5. He is not paid for some work related travel in his own vehicle;

6. The rate he is paid does not cover all of his expenses for the operation and maintenance of his vehicle;

7. He receives tips for deliveries but not for work performed in the store;

8. He averages two delivery orders per hour and drives approximately six miles round trip for each delivery; and,

9. He does not recall having been informed by Defendants of the requirements for taking a tip credit.

The Defendants submitted the Declaration of Mr. Vlasak, who is the President/Vice President of Pie Kingz, LLC, Pie Kingz II, Inc., Pie Kings 3, Inc., and Pie Kingz 4, Inc. Mr. Vlasak's declaration supports Mr. King's contentions regarding the amount he was paid both hourly and by delivery, and the types of duties he performed for the company. Mr. Vlasak also declared that from January 1 through August 31, 2019, Mr. Shell reported $4,146.91 in tips and was paid $2,398.75 in delivery fees. When all payments received by Mr. Shell are averaged out over this time period, his average hourly rate is calculated at approximately $16.04/hour. At the case management conference, counsel for the Defendants also represented that the Pie Kingz locations have a posted notice to their employees informing them of the tip credit requirements.

Applying these factual representations to the claims asserted by the Plaintiff in this case, the Court finds that there is insufficient factual support to meet the threshold requirements for conditional certification at this time. When evaluating a minimum wage violation claim, courts

look to whether a Plaintiff has identified a workweek in which his or her average wages, including tips, fell below the minimum wage. *See, e.g., Kirchgessner v. CHLN, Inc.*, 174 F.Supp. 3d 1121, 1126 (D. Ariz. 2016); *Jones v. Casey's Gen. Stores*, 538 F.Supp. 2d 1094, 1102 (S.D. Iowa 2008); *Craig v. Landry's, Inc.*, No. 1:16-CV-277, 2016 U.S. Dist. LEXIS 80489, *9 (S.D. Ohio June 21, 2016). Although Mr. Shell has alleged that he performed a combination of tipped and non-tipped work during the course of each day, he does not specifically allege that the payment he received from the combination of his wages and his tips fell short of the federal minimum wage on any given day, or any given week. Nor does he provide any factual support for the claim that any such shortfall, considered on a week by week basis, would be universal among all the delivery drivers employed by the Defendants. Further, the declaration provided by the Defendants, if true, would suggest that Plaintiff's average pay was, in fact, greatly in excess of the minimum wage rate.

Plaintiff's minimum wage claim appears to rely on the additional allegation that the overall weekly wage for delivery drivers was diminished because they were required to use their own personal cars for delivery and were not adequately reimbursed for the operation and maintenance costs incurred. The parties agree that drivers were reimbursed $1.25-$1.50 per delivery for the use of their personal vehicles. Mr. Shell alleges that he averaged two deliveries per hour, and that each delivery was an average of six miles, for an estimated $2.50-$3.00 dollars paid per hour for twelve miles driven.[2] If this average were to be accepted and applied evenly throughout his term of employment, this would amount to a reimbursement rate of between forty-

---

[2] This does not appear to discount the hours when no deliveries were made and Plaintiff was doing "non-related" work in the store.

one and fifty cents a mile. There is no evidence whatsoever that these averages would have been the same for any other drivers or that they would be equal among various shifts.

Plaintiff claims he was entitled to an amount of fifty eight cents a mile pursuant to IRS regulations. Given the averages he has alleged in his Declaration, this would mean he was shorted, at most, between eight and seventeen cents a mile. Seventeen cents a mile multiplied by Plaintiff's estimated twelve miles driven per hour equals $2.04 per hour. If this alleged average shortfall is combined with the twenty-five cent difference between the driver's wages and the federal minimum wage, an average tip of $2.29 would be sufficient to make up the shortfall. There is no allegation that he failed to derive $2.29/hour in tips on average.[3] Again, there is no evidence or allegation that these shortfalls would be the same for all delivery drivers. Further, Plaintiff has not offered any factual support for his conclusory allegation that reimbursement rate paid by the Defendants did not, in fact, cover the costs of maintenance and operation of his vehicle attributable to his work, or by how much it fell short. Nor does he allege that all driver's costs were equal, and that they were, therefore, equally underpaid.

Finally the factual allegations underlying Plaintiff's claim that Defendants violated a requirement to notify employees that tips would be credited towards their minimum wage are insufficient to establish that class certification is appropriate. The Plaintiff does not allege in his declaration that he was never informed about tip credits, that he was unaware that tips would count toward his minimum wage requirement, or that there was a policy to universally hide this

---

[3] While the minimum wage requirements are not averaged over the course of months, the numbers provided to the Court at this pre-discovery juncture have all been couched in general averages over months. Thus, until more detailed factual allegations are established such generalities are the Court has to review and work off from.

information from other employees. He merely states that he does "not recall ever being informed by Defendants of the requirements for taking a tip credit." This statement overstates what was required in the form of notification, and fails to allege that the information required was withheld, let alone withheld universally from all delivery drivers. Defendants have also represented through their counsel they do post the information required to notify employees about the tip credit at all of their locations.

Although Plaintiff may have met the pleading requirements to state a claim for potential violations of the FLSA, he has not provided sufficient factual support to meet the threshold requirements for conditional certification at this time. The Court has already set a fact discovery deadline for May 20, 2019. The certification issue may be re-visited at the end of this discovery period if the process uncovers sufficient factual support for class consideration.

### III. CONCLUSION

For the reasons stated above, the Court finds that the Plaintiff has not met his burden of making a factual showing that his alleged claims are representative of the claims of the proposed class. Additional discovery is required before such a determination can be properly made. The Plaintiff's Motions for Conditional Class Certification is, therefore, DENIED at this time.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: November 27, 2019